IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN<br>SECURITIES, DERIVATIVE, AND<br>ERISA LITIGATION | )  2:09-md-2009-SHM<br>)<br>)<br>) |
| | ) |
| This Document Relates To: | )<br>) |
| Purdue Avenue Investors, LP,<br>et. al., v. Morgan Keegan &<br>Co., Inc., et. al.,<br>No.2:10-cv-02260-SHM-dkv | )<br>)<br>)<br>) |

ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

Purdue Avenue Investors, L.P. ("Purdue"), Mary Ann Howard, and Dana Howard, as Trustee of the Molly A. Howard Trust, (collectively, "Plaintiffs") filed suit in Texas state court on October 23, 2009, alleging that Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), James C. Kelsoe, Jr. ("Kelsoe"), and Thomas Orr ("Orr") failed to disclose and misrepresented material information about the RMK Advantage Income Fund and the RMK Strategic Income Fund. (See Pls.' Original Petition ("Complaint"), ECF No. 1-3.)

Defendants removed the action to the United States District Court for the Northern District of Texas on November 24, 2009, asserting that court had jurisdiction under 28 U.S.C. §§ 1331,

1332, and 1441.  (See Notice of Removal of Civil Action ("Notice of Removal"), ECF No. 1.)  On November 25, 2009, Defendants filed a motion for temporary stay of proceedings pending a determination by the Judicial Panel on Multidistrict Litigation ("JPML") about whether to transfer the action for consolidated pretrial proceedings to the Western District of Tennessee pursuant to 28 U.S.C. § 1407.  (See ECF No. 3.)

On December 15, 2009, Plaintiffs filed a Motion to Remand the case and a response to Defendants' motion to stay.  (See ECF Nos. 6 and 7.)  Plaintiffs filed a Corrected Motion to Remand on December 23, 2009. (See Pls.' Corrected Mot. for Remand and Mem. in Supp. ("Pls.' Corrected Mot."), ECF No. 8.)  Defendants responded on January 5, 2010.  (See Defs.' Opp. to Pls.' Mot. for Remand ("Defs.' Opp."), ECF No. 11.)  On March 11, 2010, Plaintiffs filed a notice to the Court advising it of what Plaintiffs believed to be a relevant decision (ECF No. 17), and Defendants filed a response to that notice on March 12, 2010. (ECF 19).

The United States District Court for the Northern District of Texas granted Defendants' motion for temporary stay of proceedings on March 25, 2010, and on April 5, 2010, the JPML entered an order transferring the case to the United States District Court for the Western District of Tennessee.  (ECF No. 28.)  Plaintiffs filed a second Motion to Remand the action on

June 17, 2010.  (Pls.' Mot. for Remand ("Pls.' Mot. for Remand"), ECF No. 33.)  Defendants responded on June 30, 2010.  (Opp. to Pls.' Mot. for Remand ("Opp. to Pls.' Mot."), ECF 42.)

For the following reasons, Plaintiffs' Motions to Remand are GRANTED.

## I. Background

In their Complaint, Plaintiffs allege that Defendants defrauded their bond fund purchasers when Defendants "omitted, concealed, failed to disclose and/or misrepresented facts" about the RMK Advantage Income Fund ("RMA") and the RMK Strategic Income Fund ("RSF") (collectively, the "Funds").  (Complaint ¶¶ 14-15.)  Plaintiffs allege that they purchased shares of the Funds in the secondary market "in reliance on Defendants' false representations and omissions of material fact."  (Pls.' Corrected Mot. 2.)  Purdue was a limited partnership organized under the laws of Texas[1] that invested approximately $2,284,059 in the Funds from April 2004 through August 2005.  (Complaint ¶ 35.)  Plaintiff Mary Ann Howard ("Howard") invested approximately $203,199 in the Funds from April 2004 through August 2005, and the Molly A. Howard Trust (the "Howard Trust")

---

[1] The Texas Secretary of State issued a forfeiture notice pursuant to § 171.309 of the Texas Tax Code, effective August 28, 2009.  Purdue forfeited its legal existence and may act through its general partners: Dana K. Howard and Robert E. Howard IV.  (Notice of Removal ¶ 9.)  Defendants state, and Plaintiffs do not contest, that Dana K. Howard and Robert E. Howard IV are Purdue's only partners, general or limited.

invested approximately $98,148 in the Funds during the same period.  (Id.)

Plaintiffs allege that Defendants misrepresented or omitted material facts about the Funds, specifically: (1) the nature and extent of the risks; (2) the securities' illiquidity; (3) improper valuation and pricing; (4) asset values based on false assumptions; (5) erroneous estimates underlying the Net Asset Values; (6) high concentrations of investments in the mortgage industry; (7) overlapping underlying investments eliminating true diversification between Funds; and (8) the use of principal rather than interest to pay dividends.  (Complaint ¶ 15.) Plaintiffs seek "redress for the fraud perpetrated upon them, for rescission of the purchase of the securities . . . and for compensation for the injuries and damages suffered by them as a result of the acts of the Defendants in violation of the Texas securities laws."  (Id. ¶ 2.)

Plaintiffs contend that this action should be remanded to state court because this Court lacks subject-matter jurisdiction.  (Pls.' Corrected Mot.)  Plaintiffs assert that their causes of action do not arise under the Constitution, treaties, or laws of the United States and that their state-law claims of common law fraud, blue-sky violations, breach of contract, breach of fiduciary duty, and negligence are not subject to the original jurisdiction of this Court.  (Id. at 1.)

Plaintiffs argue that Defendants' removal of this case based on diversity jurisdiction is not proper because Plaintiffs have properly joined a non-diverse defendant and there is no diversity of citizenship. (Id. at 2.)

## II.  Standard of Review

On a motion for remand, the removing parties bear the burden of establishing federal jurisdiction.  Longo v. Bando Mfg. of Am., Inc., 201 F.3d 754, 757 (6th Cir. 2000).  Removal under 28 U.S.C. § 1441 is permitted in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. §1441(a).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  "[T]he effect of removal is to deprive the state court of an action properly before it," and because such removal "raises significant federalism concerns," the federal removal statute is subject to strict construction.  Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995); see also Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 (1986); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107 (1941).

Removal jurisdiction requires a showing that the federal court has original jurisdiction over the action, either through: (1) diversity of citizenship under 28 U.S.C. § 1332; or (2)

federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441. Defendants assert that the Court had both diversity and federal question jurisdiction over this action at the time of removal. (Notice of Removal 1.)

### III.        Analysis

#### A. Federal Question Jurisdiction

Where, as here, defendants seek to remove a suit to federal court based on federal question jurisdiction, they may do so only where the suit "aris[es] under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441(b); see also 28 U.S.C. § 1331.  To support federal question jurisdiction, one of three preconditions must exist: 1) federal law creates the plaintiff's cause of action; 2) plaintiff's right to relief under state law requires resolution of a substantial federal-law question actually in dispute; or 3) the claim is in substance one of federal law.  City of Warren v. City of Detroit, 495 F.3d 282, 286 (6th Cir. 2007).

The allegations of a plaintiff's well-pleaded complaint will determine whether a cause of action presents a federal question.  Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1 (1983).  In this case, Plaintiffs assert only state law claims.  "[T]he fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of

action." Loftis v. United Parcel Service, Inc., 342 F.3d 509,
515 (6th Cir. 2003) (quoting Alexander v. Elec. Data Sys. Corp.,
13 F.3d 940, 943 (6th Cir. 1994)); see also Landers v. Morgan
Asset Management, Inc., No. 08-2260, 2009 U.S. Dist. LEXIS
30891, at *15-17 (W.D. Tenn. Mar. 31, 2009).

A plaintiff is "the master of her complaint," and when a
plaintiff has a choice between federal and state law claims, she
may choose to defeat a defendant's opportunity to remove by
proceeding in state court "on the exclusive basis of state law."
Carpenter, 44 F.3d at 366; see also Loftis, 342 F.3d at 515. A
defendant may not establish federal question jurisdiction based
on a theory that is not advanced by the plaintiff in her
complaint. Merrell, 478 U.S. at 809, n.6; see also Brilliard v.
Morgan Asset Management, 2010 U.S. Dist. Lexis 63416 (W.D. Tenn.
2010). "A defendant may not remove on the basis of an
anticipated or even inevitable federal defense, but instead must
show that a federal right is 'an element, and an essential one,
of the plaintiff's cause of action.'" Carpenter, 44 F.3d at 366
(quoting Gully v. First Nat'l Bank, 299 U.S. 109, 111 (1936)).
Courts have "confined federal-question jurisdiction over state-
law claims to those that 'really and substantially involv[e] a
dispute or controversy respecting the validity, construction or
effect of [federal] law.'" Grable & Sons Metal Prod., Inc. v.
Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Shulthis

7

v. McDougal, 225 U.S. 561, 569 (1912)).  There is no "single, precise, all-embracing test" to determine when federal jurisdiction is triggered by federal-law issues embedded in state-law claims.  Grable, 545 U.S. at 314 (internal quotation marks and citation omitted).

Defendants assert that the exercise of federal jurisdiction is appropriate because Plaintiffs' claims raise substantial issues of federal law.  (Defs.' Opp. 8.)  In their Complaint, Plaintiffs assert violations of the Texas Securities Act ("TSA"), common law fraud, breach of contract, control person liability, and common law negligence.  (Complaint ¶¶ 38-57.) Defendants argue that "Plaintiffs' claims arise under and depend upon the resolution of federal securities law, rules, and regulations governing the liquidity, concentration and valuation of the Funds' assets." (Id. at 2.)  Defendants contend that, because the Funds were formed pursuant to the Investment Company Act of 1940 (the "ICA"), the ICA "will be used to make uniform determinations about the Funds' asset valuation, liquidity and concentration practices." (Id. at 2, 3.)  Defendants assert that the "pervasive regulatory scheme" governing the Funds means that Plaintiffs must establish liability by evaluating Defendants' conduct against federal regulations to succeed on their state law claims, thus giving this Court federal question jurisdiction.  (Defs.' Opp. 10.)

As Defendants are aware and readily admit, this Court has already decided that issues of liquidity, concentration, and valuation do not raise substantial, disputed federal questions and that arguments to the contrary are unpersuasive.  See Brilliard, 2010 U.S. Dist. Lexis 63416; Kramer v. Regions Bank, No. 09-2408, 2010 U.S. Dist. Lexis 18570 (W.D. Tenn. Mar. 2, 2010); see also Opp. to Pls.' Mot. 2.  Nevertheless, Defendants urge the Court to reconsider its ruling in Brilliard and point to Plaintiffs' allegations about the Funds' method of dividend payment as a basis for invoking federal question jurisdiction. (Opp. to Pls.' Mot. 2 ("Plaintiffs specifically allege violations of the federal law governing an investment company's distribution of dividends, namely § 19 of the Investment Company Act, 15 U.S.C. 80a-19(a), as part of each of their claims.").) Defendants also cite this Court's decision in Landers, where the Court denied a motion to remand in a case raising claims against many of the same Defendants[2], as a basis for finding federal question jurisdiction.  See id.; Landers, 2009 U.S. Dist. LEXIS 30891.

Defendants assert that Plaintiffs' allegation about dividend payments "provides an entirely independent basis for this Court to exercise federal question jurisdiction in this

_____

[2] All of the Defendants except Orr were named defendants in the Landers case.

9

action." (Defs.' Opp. 3.) In the Operative Facts section of their Complaint, Plaintiffs merely state that, "as time went on, the [F]unds began using principal rather than interest to pay dividends, exacerbating the [F]unds' losses while keeping investors in the dark." (Complaint ¶ 17.) Plaintiffs allege a cause and effect, namely, that payment of dividends from principal compounded the losses the Funds suffered. Plaintiffs' allegation about dividend payment does not invoke the dividend distribution standards under the ICA and does not provide a basis for the exercise of federal question jurisdiction.

This case is distinguishable from <u>Landers</u> because the plaintiffs in <u>Landers</u> "explicitly ask[ed] the Court to evaluate Defendants' conduct on the basis of federal statutes, regulations and standards." <u>Landers</u>, 2009 U.S. Dist. LEXIS 30891 at *22 (internal quotations omitted). Plaintiffs there conceded that "the federal laws referenced in the Complaint provide[d] standards against which to measure Defendants' conduct and [were] part of the proof of the elements of the state law claims." <u>Id.</u> Plaintiffs in the case at bar do not reference the ICA or any other federal statute, rule, or regulation. (Pls.' Reply to Defs.' Opp. to Mot. for Remand and Mem. in Supp. ("Pls.' Reply") 2.)

As pled, Plaintiffs' claims do not raise substantial questions of federal law. "[I]t takes more than a federal

element 'to open the "arising under" door.'"  Empire

HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701

(2006) (quoting Grable, 545 U.S. at 313).  Plaintiffs assert

that their claims (alleging violations of the TSA, common law

fraud, breach of contract, control person liability, and common

law negligence) may be proven without reliance on the ICA or any

other federal statute.  (Pls.' Reply 2.)  Plaintiffs' claims are

based on state or common law and do not directly reference

federal law.

     The claims here are similar to those in Brilliard, where

the plaintiffs asserted, inter alia, that the defendants had

violated the Tennessee Consumer Protection Act and the Tennessee

Securities Act and had committed common law fraud.  Brilliard,

2010 U.S. Dist Lexis 63416 at 13.  This Court concluded in

Brilliard that all of the defendants' arguments were defenses,

and that the plaintiffs could demonstrate the elements of the

claims alleged without reference to federal law.  Defendants in

this case argue that Plaintiffs' claims "cannot succeed absent a

showing that the Funds did not adhere to . . . federal law

requirements."  (Defs.' Opp. 11.)  As in Brilliard, the

Plaintiffs do not need to rely on federal regulatory

requirements to prove their claims.  State law claims cannot

"'lose their character because it is common knowledge that there

exists a scheme of federal regulation.'"  Kramer, 2010 U.S.

Dist. LEXIS 18570, at *11 (quoting Pan Am. Petroleum Corp. v. Superior Court of Del., 366 U.S. 656, 663 (1961)).  Although a discussion of the rules and regulations established under federal statutes may bolster  Plaintiffs' claims or provide possible defenses for Defendants, reference to federal law is not, as Defendants have put it, "unavoidable in deciding the state law questions presented in the Complaint."  (Defs.' Opp. 11.)  As Plaintiffs state, "[t]he case may be tried to verdict without a discussion of a single federal regulatory requirement." (Pls.' Reply 3.)

As this Court said in Brilliard, "were the Court to accept Defendants' assertion that the potential need to apply federal law to analyze Plaintiffs' state-law claims triggers federal jurisdiction, it would be impossible to assert a state-law fraud claim against a securities dealer and remain in state court." 2010 U.S. District 63416 at 17.  If Congress had intended the exercise of federal jurisdiction to include a "a horde of original filings and removal cases raising . . . state claims with embedded federal issues," it would have explicitly provided for such a significant shift in the relative responsibilities of the state and federal courts.  Grable, 545 U.S. at 318.  The Court lacks federal question jurisdiction.

**B. Diversity Jurisdiction**

Defendants assert that this Court has original jurisdiction under the diversity statute, 28 U.S.C. § 1332.  Section 1332(a) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a).  There is no dispute about the amount in controversy.  Plaintiffs assert that their individual and cumulative losses exceed $75,000.  (Complaint ¶ 35; Notice of Removal ¶ 17.)  The sole issue is diversity of citizenship.  Plaintiffs argue that diversity is incomplete because both Defendant Orr and two of the Plaintiffs are citizens of Texas.  Defendants argue that Plaintiffs joined Orr solely for the purpose of defeating diversity jurisdiction and that the joinder is improper because Plaintiffs have not sufficiently alleged a cause of action against Orr.  (Notice of Removal ¶¶ 12, 18-25, p.5; Defs.' Opp 19-20.)

"For a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of . . . complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant."  In re Briscoe, 448 F.2d 201, 215 (3d Cir. 2006).  When the complaint was filed, Purdue was a Texas limited partnership organized under the laws of the State of Texas.

Purdue was a citizen of Texas for diversity purposes because its only partners, Dana K. Howard and Robert E. Howard IV, were residents and citizens of Texas. See Carden v. Arkoma Assoc., 494 U.S. 185, 192-195 (1990) (holding that a court must consider the citizenship of all of an entity's members to determine the citizenship of an entity for diversity purposes); (see also Notice of Removal ¶ 9; Complaint ¶ 3.)  Plaintiff Dana K. Howard, the Trustee of the Howard Trust, resided in and was a citizen of Texas, as was Molly A. Howard, the beneficiary of the trust.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 462 (1980) ("[T]rustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their citizenship."); (Notice of Removal ¶ 11; Complaint ¶ 6). Plaintiff Mary Ann Howard resided in and was a citizen of Oklahoma.  (Notice of Removal ¶ 10; Complaint ¶ 5.) Defendant Morgan Keegan was a corporation organized under the laws of Tennessee and had its principal place of business in Tennessee. See 28 U.S.C. 1332(c)(1); Notice of Removal ¶ 13.  Defendant MAM was a corporation organized under the laws of Tennessee and had is principal place of business in Alabama.  See 28 U.S.C. 1332(c)(1); (Notice of Removal ¶ 14).  Defendant Kelsoe resided in and was a citizen of Tennessee.  (Notice of Removal ¶ 15.) Defendant Orr was a resident and citizen of Texas.  (Id. ¶ 20.)

If Orr is a proper defendant, the parties are not completely diverse, the Court does not have subject-matter jurisdiction, and removal is inappropriate.  If Orr is not a proper defendant, the parties are completely diverse and the conditions of subject-matter jurisdiction under 28 U.S.C. § 1332 have been satisfied.  Defendants allege that this Court has diversity jurisdiction because Plaintiffs cannot state a claim against Orr and his joinder as a defendant is improper.  (Notice of Removal ¶ 18.)

### 1. Fraudulent Joinder

"'When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.'" Casias v. Wal-Mart Stores, Inc., 695 F.3d 428, 432 (6th Cir. 2012) (quoting Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999)).  To demonstrate fraudulent joinder "'the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law.'"  Kent State Univ. Bd. of Trs. v. Lexington Ins. Co., No. 11-3601, 2013 U.S. App. LEXIS 1533, at *10 (6th Cir. Jan. 22, 2013) (quoting Coyne v. Am. Tobacco Co., 183 F.3d 488, 492-93 (6th Cir. 1999)).  In this Circuit:

> [I]f there is a colorable basis for predicting that a
> plaintiff may recover against non-diverse defendants, [the]
> Court must remand the action to state court.  The district
> court must resolve all disputed questions of fact and
> ambiguities in the controlling state law in favor of the
> non removing party. All doubts as to the propriety of
> removal are resolved in favor of remand.

Id.

A defendant attempting to prove fraudulent joinder "faces a particularly heavy burden."  Id. at *11.  A court considering allegations of fraudulent joinder "appl[ies] a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss."  Casias, 695 F.3d at 433.  The court can "pierce the pleading" to look at outside materials "for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'"  Id. (quoting Walker v. Phillip Morris USA, Inc., 443 F. App'x 946, 955-56 (6th Cir. 2011))

### 2. Plaintiffs' Allegations Against Orr

Plaintiffs allege that Orr is "an Executive Managing Director of [Morgan Keegan], manager of the firm's Houston branch and is also the regional manager over [Morgan Keegan's] West Region offices." (Complaint ¶ 10.)  They allege that Orr "made numerous misrepresentations and omissions of material facts necessary in order to make the statements that were made in light of the circumstances under which they were made not misleading." (Complaint ¶ 36.)  Plaintiffs allege that "public

16

statements of the Defendants, including Kelsoe and Orr"
constitute "statements and omissions" of material fact for
purposes of the TSA.  (Id. ¶ 39.)  Plaintiffs also allege that
Orr is a "control person" within the meaning of the TSA.  (Id. ¶
55.)  They allege that Orr "rendered assistance in the face of a
perceived risk that his assistance would facilitate untruthful
or unlawful activity by the primary violator(s) and...possessed
a general awareness that his role was part of an overall
activity that is improper."  (Id.)  Plaintiffs acknowledge that
Orr did not have "direct contact with the Plaintiffs" but argue
that the TSA does not require such contact to establish control
person liability for the fraudulent offer, sale, or delivery of
securities.  (Id.)

The burden is on the Defendants to show that there is no
possibility of recovery against Orr, and the Court evaluates all
factual allegations in the light most favorable to the
Plaintiffs.  Defendants argue that the Plaintiffs have alleged
only Orr's title and have failed to allege any facts that
demonstrate Orr's involvement in the investment decisions.
(Opp. To Pls.' Mot. 6.)  Defendants argue that the Plaintiffs
have not alleged how Orr was "involved in the management of the
Funds or the issuance of any official statements or disclosures
about the Funds."  (Id.)  Defendants claim that Plaintiffs'
Complaint contains no allegations that Orr interacted with

17

Plaintffs or directly managed the Funds or Fund disclosures, and that the Complaint is "devoid of allegations concerning any action by Mr. Orr that would give rise to liability." (Id.)

### 3. Choice of Law – Substantive Law

As a presumptive diversity action, the substantive law governing this case is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Klaxon Co. v. Stentor Elect. Mfg. Co., this Court ordinarily applies the choice of law rules of Tennessee, the state in which it sits. 313 U.S. 487, 496 (1941). In this case, however, the choice of law rules of Texas must apply because the case was originally filed in state court in Texas and removed to the district court in Texas before it was transferred to this Court by the JPML. See In re Nucorp Energy Sec. Litig., 772 F.2d 1486, 1492 (9th Cir. 1985); 17 Georgene Vairo, Moore's Federal Practice §112.07 (3d. ed. 2010) ("In multidistrict litigation that has been transferred to a central forum for coordinated or consolidated pretrial proceedings, the transferee federal district court must apply the substantive state law of the transferor district, including its choice of law rules.") For civil claims, Texas follows the "most significant relationship" test stated in sections 6 and 145 of the Restatement (Second) of Conflicts.[3]

---

[3] Section 6 of the Restatement provides that, absent a statutory directive of its own state on choice of law, the factors relevant to the

*Alert 24 Sec., LLC v. Tyco Int'l Ltd.*, 823 F.Supp.2d 589, 595
(S.D. Tex. 2011).  Texas courts consider "the qualitative nature
of the particular contacts" with a state and the "state policies
underlying the particular substantive issues."  *Duncan v. Cessna
Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).

The substantive issue at bar is whether Plaintiffs have
asserted a cause of action against Orr.  Orr resides in and is a
citizen of Texas.  (Complaint ¶ 10.)  He is an Executive
Managing Director of Morgan Keegan and manages both the firm's
Houston branch and its West Region offices.  (*Id.*)  Plaintiffs
allege multiple violations of the TSA that arise from injurious
activities occurring, in part, while Orr worked in Texas.  (*Id.*
at ¶¶ 10, 40, 45, 55.)  No party alleges that another state has
a more significant relationship to the litigation against Orr.
Both Defendants and Plaintiffs assume that Texas substantive law
applies.  Both cite only cases from the Supreme Court, the Fifth

---

applicable rule of law include: (a) the needs of the interstate and
international systems; (b) the relevant policies of the forum; (c) the
relevant policies of other interested states and the relative interests of
those states in the determination of the particular issue; (d) the protection
of justified expectations; (e) the basic policies underlying the particular
field of law; (f) certainty, predictability and uniformity of result; and (g)
ease in the determination and application of the law to be applied.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS §6 (1971)

Section 145 of the Restatement provides that the factual matters to be
considered when applying the principles of Section 6 to a given case include:
(a) the place where the injury occurred; (b) the place where the conduct
causing the injury occurred; (c) the domicile, residence, nationality, place
of incorporation and place of business of the parties; and (d) the place
where the relationship, if any, between the parties is centered. These
contacts are to be evaluated according to their relative importance with
respect to the particular issue.  *Id.* at § 145.

Circuit Court of Appeals, and the courts of the state of Texas. (See e.g., Defs.' Opp. 20 nn.64-68, 21 nn.69-73, 22 nn.75-78, 23 nn.82-84 & 24 nn.85; Pls.' Corrected Mot. 8 n.41 & 9 nn.42-45.) The Court will apply the substantive law of Texas.

### 4. Choice of Law – Procedural Rules

Although the parties do not address the choice of procedural law in their submissions, the Court cannot proceed until it determines which jurisdiction's procedural rules apply. This case has proceeded before the District Court of Dallas County, Texas, the Federal District Court for the Northern District of Texas, and the Federal District Court for the Western District of Tennessee.  Three sets of procedural rules are potentially applicable.

When a federal court sits in diversity it applies the "substantive law of the state in which it sits." Shaffer v. CSX Transp., Inc., 462 F. App'x 597, 599 (6th Cir. 2012). "Federal courts, however, may apply their own procedural rules." Id. (emphasis added); see also Nye v. CSX Transp., Inc., 437 F.3d 556, 563 (6th Cir. 2006); Belcher v. Great Lakes Steel Corp., 843 F.2d 1390, 1390 (6th Cir. 1988) ("Federal courts, however, generally follow their own procedural rules." (emphasis added)). The Sixth Circuit has articulated a test to determine "whether a federal court should apply a state rule when it is enforcing rights created by state law":

20

1. If the state provision is the substantive right or obligation being asserted, the federal court must apply it.
2. If the state provision is a procedural rule which is intimately bound up with the substantive right or obligation being asserted, the federal court must apply it.
3. If the state provision is a procedural rule which is not intimately bound up with the substantive right or obligation being asserted, but its application might substantially change the outcome of the litigation, the federal court should determine whether state interests in favor of applying the state rule outweigh countervailing federal considerations against application of the rule. If the state interests predominate, the state rule should be adopted.

Miller v. Davis, 507 F.2d 308, 314 (6th Cir. 1974).

For the reasons discussed above, the substantive law of Texas, rather than the substantive law of Tennessee, applies. Therefore, the Court would be enforcing rights created by Texas law, and the test in Miller governs in deciding whether to apply Texas procedural rules.

Under the fraudulent joinder standard, a defendant has a heavy burden to show that the plaintiff has no reasonable possibility of recovery against a non-diverse defendant. The Court's analysis is structured as a "12(b)(6)-type" inquiry. In practice, the question of jurisdiction essentially turns on the sufficiency of the plaintiff's pleadings. See Walker, 443 F. App'x at 952-54. "'Ordinarily if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.'" Id. (quoting Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 573

(5th Cir. 2004)).  The applicable pleading standard, which is a procedural rather than substantive issue, see Fed. R. Civ. P. 8(a), can be dispositive of the question of diversity jurisdiction.

This case was initially filed in the District Court for the 101st Judicial District of Dallas County, Texas.  (Compl.) Texas courts follow a "fair notice" pleading standard.  Low v. Henry, 221 S.W.3d 609, 612 (Tex. 2007).  Under a fair notice standard, "courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy."  Id.  Texas Rules of Civil Procedure "45 and 47 require that the original pleadings give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved....Rule 45 does not require that the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action."  Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 230 (Tex. 2004).  In Texas courts, "an opposing party should identify defects in a pleading using special exceptions so that a party may cure a defect by amendment if possible....In the absence of special exceptions, [the court] construe[s] the petition liberally in the pleader's favor."  Vann v. Conner, No. 01-12-00621-CV, 2013 Tex. App. LEXIS 381, at *3 (Tex. Ct. App.

Jan. 17, 2013). "A state court petition is to be liberally construed and is adequately pleaded if one can reasonably infer a cause of action from what is stated in the petition, even if the pleading party fails to allege specifically one of the elements of a claim." Durable Specialties, Inc. v. Liberty Ins. Corp., No. 3:11-CV-739-L, 2011 U.S. Dist. LEXIS 1150298, at *11-12 (N.D. Tex. Dec. 30, 2011) (emphasis added).

Federal courts follow a far stricter pleading standard. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain:...a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Case law imposes further requirements. A plaintiff must support a claim by showing "facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 679.

A more stringent pleading standard applies to claims sounding in fraud. Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the Sixth Circuit, "[t]o plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." Chesbrough v. VPA, P.C., 655 F.3d 461, 467 (6th Cir. 2011).

Because the Western District of Tennessee and the Northern District of Texas are both subject to the Federal Rules of Civil Procedure, they would typically apply the same pleading standard. On the issue of removal, however, the Northern District of Texas has routinely chosen to apply the Texas state procedural rule rather than the federal procedural rule. See, e.g., Fantroy v. Dallas ART, No. 3:13-CV-0345-K, 2013 U.S. Dist. LEXIS 73013, at *9-10 (N.D. Tex. May 23, 2013); Yeldell v.

Geovera Specialty Ins. Co., No. 3:12-cv-1908-M, 2012 U.S. Dist. LEXIS 160499, at *6-8 (N.D. Tex. Nov. 8, 2012); Delaney v. Geo Group, Inc., No. SA-12-Cv-541-XR, 2012 U.S. Dist. Lexis 114432, at *6-7 (N.D. Tex. Aug 14, 2012); Durable Specialties, 2011 U.S. Dist. LEXIS 150298, at *15-16 ("The Court does not believe that a pleader in state court should be so hapless that he or she is put in the untenable position of having to anticipate removal to a federal court system that applies a more exacting pleading standard. Fundamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court should govern."). These courts rely on the Fifth Circuit's application of the Texas pleading standard to a Motion for Remand in an unpublished opinion, De La Hoya v. Coldwell Banker Mexico, Inc., 125 F. App'x 533 (5th Cir. 2005).

District courts in this Circuit have applied more lenient state pleading standards when considering fraudulent joinder. Kentucky continues to use a lenient notice-pleading standard that is similar to the Texas fair notice standard. Williams v. Altman, McGuire, McClellan & Crum, No. 12-131-ART, 2013 U.S. Dist. LEXIS 281, at *7 (E.D. Ky. Jan. 2, 2013) ("Kentucky courts may dismiss plaintiffs' complaints only where they would not be entitled to relief under any set of facts which could be proved under the complaint." (internal quotations omitted)). A court in the Eastern District of Kentucky has decided that because the

test for fraudulent joinder is "whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under state law...it makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards." In re Darvocet, Davron and Propoxyphene Products Liability Litigation v. McKesson Corp., No. 2:12-50-DCR, 2012 U.S. Dist. LEXIS 101955, at *20 (E.D. Ky. July 27, 2012) (emphasis in original). There is a growing body of law in the Eastern District of Kentucky applying state pleading standards to determine whether plaintiffs have colorable claims when defendants allege fraudulent joinder. See Combs v. ICG Hazard, LLC, No. 6:12-CV-230-DLB-HAI, 2013 U.S. Dist. LEXIS 43292, at *10-12 (E.D. Ky. March 1, 2013) (applying the Kentucky pleading standard); Williams, 2013 U.S. Dist. LEXIS 281, at *7-8 (applying the Kentucky pleading standard); In re Darvocet, 2012 U.S. Dist. LEXIS 101955, at *20-22 (applying the California pleading standard).

Plaintiffs' allegations against Orr as stated in the Complaint are conclusory. They would be insufficient to satisfy the federal pleading standard under Rules 8(a) and 9(b). However, the Plaintiffs do allege all of the elements of their causes of action against Orr. Those allegations are sufficient to give Orr fair notice of the nature of the claims against him

and the type of evidence that might be necessary to prove those claims.  See, e.g., Durable Specialties, 2011 U.S. Dist. LEXIS 150298, at *16 ("the pleadings [are] 'bare-bones'....Texas courts, however, do not require much as to the sufficiency of pleadings....The allegations, taken as a whole, provide sufficient information from which one could reasonably infer a cause of action....Accordingly the court cannot find that there is no reasonable possibility of recovery...in state court and...has no basis to conclude that [defendant] was improperly joined.")

Application of the federal pleading standard would, in this case, produce the opposite result from application of the Texas pleading standard.  In such circumstances, a balancing of federal and state interests under the third section of the Miller test is appropriate.  Miller, 507 F.2d at 315.  The Court must determine "whether state interests in favor of applying the state rule outweigh countervailing federal considerations against application of the rule."  Id.

Texas has an interest in allowing liberal pleading and permitting cases to go forward on the basis of sufficient notice to defendants.  See, e.g., Low, 221 S.W.3d at 612.  Here, the countervailing federal interest is in consolidation and efficiency through the multidistrict litigation mechanism.  The JPML may transfer cases "to any district for coordinated or

consolidated pretrial proceedings" when "civil actions involving one or more common questions of fact are pending in different districts."  28 U.S.C. § 1407(a).  The purpose of those transfers is to promote "the convenience of parties and witnesses" and "the just and efficient conduct of such actions." Id.  Thus, in "federal multidistrict litigation there is a preference for applying the law of the transferee district," rather than the laws of the various transferor districts, for purposes of efficiency and fairness.  Louisiana Wholesale Drug Co. v. Hoechst Marion Roussel, Inc., 332 F.3d 896, 911 n.17 (6th Cir. 2003).

Not only state considerations, but important federal concerns favor applying the state procedural rule in this case.

First, the issue here is, at bottom, whether the Court has subject-matter jurisdiction.  Under the circumstances of the case as presented, if federal procedural rules apply, removal was proper and the Court has jurisdiction.  If the state procedural rules apply, the Court does not have jurisdiction and remand is necessary.  "'Federal courts are courts of limited jurisdiction.'"  Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d 250, 255 (6th Cir. 2011) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  Federal jurisdiction exists only where it is granted by statute, and "'[a]ll doubts as to the propriety of removal are resolved in

favor of remand.'" Walker, 443 F. App'x at 952 (quoting Coyne, 183 F.3d at 493). So, although "there is a federal interest in having federal courts adjudicate all cases properly brought under a jurisdictional grant from Congress," there is an equally strong interest in not overstepping the bounds of jurisdiction and not deciding, without authority, cases that are properly before state courts. Miller, 507 F.2d at 317.

Second, there is a fundamental federal interest in "'discouragement of forum-shopping and avoidance of inequitable administration of the laws'" in diversity cases. Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303, 308 (6th Cir. 2007) (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)). These foundational aims of diversity jurisdiction doctrine counsel against application of the federal pleading standard in this case. The Northern District of Texas applies the Texas pleading standard to claims of fraudulent joinder. If the Court were to apply the federal pleading standard in this case, it would not only reach a different result from the Texas state court, it would also reach a different result from the Northern District of Texas. It is self-evidently contrary to federal interests in preventing forum-shopping and inequitable administration for different federal courts to reach different substantive outcomes on the basis of federal procedural rules.

In the circumstances of this case, the combined state and federal interests in favor of applying the state pleading standard outweigh the general federal interest in uniformly applying the same procedural rules to all cases in a multidistrict litigation.  Applying the Texas pleading standard, the Court cannot find that the Defendants have shown the Plaintiffs have no reasonable possibility of recovery on their claims against Orr under Texas law.  Because Orr is a properly joined defendant, the parties are not completely diverse and the Court does not have subject-matter jurisdiction over this case under 28 U.S.C. § 1332.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' Motions to Remand are GRANTED.  The Court lacks both federal question jurisdiction and diversity jurisdiction.  Orr is a properly joined defendant, and the parties are not completely diverse.  Remand is required.

This case is REMANDED to the District Court for the 101st Judicial District of Dallas County, Texas.


So ordered on this 31st day of May, 2013.


s/ Samuel H. Mays, Jr.___
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE